El Pueblo de Puerto Rico, demandante y apelado, *v.* Joaquín Vidal Márquez, acusado y apelante.

Núm. 12259.—*Sometido:* Noviembre 3, 1947   *Resuelto:* Noviembre 24, 1947.

758

*Carlos E. Colón,* abogado del apelante; *Hon. Procurador General Luis Negrón Fernández* y *Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Joaquín Vidal Márquez fué acusado de un delito de infracción a la Ley Insular de Suministros núm. 228 de 1942 ( (2) pág. 1269), artículo 10, inciso A, en relación con la Orden Administrativa núm. 87 del Administrador General de Suministros de 4 de agosto de 1946, porque allá por uno de los días del mes de agosto de 1946 violó lo dispuesto en la ley y la orden administrativa ya mencionada al vender al Sr. Fernando Ripoll para su consumo propio, media libra de manteca de cerdo (de latón) en la cantidad de 40 centavos, o sea, a razón de 80 centavos libra, el cual era un precio mayor al de 30 centavos la libra al consumidor, que era el precio autorizado. Se celebró juicio y el acusado fué convicto del delito imputado condenándosele a tres meses de cárcel y $10 de multa sin costas. De esta sentencia apela el acusado para ante este Tribunal alegando como primer señalamiento "que la corte inferior cometió grave error *a quo* al declarar al acusado culpable y convicto de un delito completamente distinto al imputádole en la acusación, por lo que la sentencia apelada es nula de toda nulidad.''

■ No tiene razón el acusado apelante. De la transcripción de autos aparece que la corte a quo declaró al acusado culpable y convicto del delito que se le imputaba en la acusación. La acusación le imputaba un delito por infracción a la Ley de Suministros núm. 228 de 1942, artículo 10, inciso A, en relación con la Orden Administrativa núm. 87 del Administrador General de Suministros de 4 de agosto de 1946. No se ha cometido el error señalado.

■ Como segundo y tercer señalamientos el acusado apelante alega, primero "que la corte inferior cometió grave error a quo al declarar sin lugar la excepción perentoria de falta de jurisdicción interpuesta por el acusado en el presente caso y la que por la presente se reproduce en apelación por ser privilegiada" y segundo "que tanto la corte inferior como este Honorable Tribunal en apelación carecen de jurisdicción para declarar culpable y convicto al acusado de una infracción a la Orden Administrativa núm. 87 del Administrador General de Suministros de 4 de agosto de 1946, en relación con la Ley núm. 228 de 1942 por ser dicho reglamento núm. 87 de 4 de agosto de 1946 nulo y anticonstitucional." Procederemos a discutir conjuntamente ambas alegaciones tal como lo ha hecho el acusado apelante, ya que los mismos envuelven una sola cuestión, a saber: la nulidad de la orden administrativa cuya violación se le imputa al acusado.

Sostiene el acusado apelante que la orden administrativa es nula y anticonstitucional porque la misma, al imponer precios máximos a la manteca, viola la política pública del Congreso de los Estados Unidos, según la misma fué esbozada en la Ley Prorrogando el Control de Precios, de 25 de julio de 1946 (Public Law 548, 79th Congress) en su sección 3, subsección 1A y porque dicho reglamento, al imponer un precio máximo a la venta al detall de la manteca violó lo dispuesto por el Congreso Federal en la referida Ley de Prórroga de 25 de julio de 1946 en su sección 3, párrafo 8, subpárrafo (a) y por lo tanto, estando en abierto conflicto con dicha legisla-

ción federal, es nula o a lo sumo estaba en suspenso durante el período que se alega se cometió el delito imputado.

En la sección 3-8(A) de la ley ya mencionada, el Congreso Federal dispuso que:

"Ningún precio máximo y ningún reglamento u orden promulgada bajo esta Ley o la Ley de Estabilización de 1942, según fué enmendada, será aplicable con anterioridad a agosto 21, 1946, en relación con ganado, leche o alimentos o productos alimenticios cuya elaboración o manufactura proceda en todo o en parte sustancial de ganado o leche . . ."

La Ley Federal de Control de Precios expiró el 30 de junio de 1946 y no fué hasta el 25 de julio de ese mismo año que el Congreso actuó para ponerla en vigor nuevamente con ciertas enmiendas, entre ellas, que se eliminaran los controles sobre el precio a productos procesados y elaborados del ganado, hasta agosto 21, 1946, fecha en que el "Price Decontrol Board" podría, en su discreción, determinar si procedía o no reimponer los controles. (Sec. 3-8(A), supra.) De modo que la sección antes transcrita sólo habla de descontrol bajo la Ley de Precios Federal. Sin embargo, la misma ley, al referirse a alquileres, dispone expresamente que mientras rija la reglamentación federal, no habrá control de alquileres por los gobiernos de los estados. *Latoni* v. *Corte Municipal*, 67 D.P.R. 140. Si el Congreso creía conveniente y lo que perseguía era un descontrol total, y no meramente un descontrol federal, fácil le hubiera sido hacerlo, como lo hizo con respecto a alquileres en la misma Ley. En otras palabras, creemos que el Congreso solamente perseguía un descontrol federal en cuanto a productos procesados del ganado se refiere porque, de lo contrario, lo hubiese dispuesto expresamente como lo hizo con respecto a alquileres. Siendo esto así, los productos procesados del ganado, como lo es la manteca, no estaban cubiertos por la Ley Federal de Precios de julio 25 de 1946, y, por consiguiente, estaban sujetos a reglamentación por el Administrador General de Suministros, si así lo creía conveniente, bajo la autoridad conferídale por la

Ley 228 de 1942. Por lo expuesto, resolvemos que la orden administrativa aquí aludida, es válida y constitucional. *Pueblo* v. *Leandry,* ante, pág. 658.

*Se confirmará la sentencia apelada.*